IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAHIROU SAMASSA, | No. 1:25-CV-02197 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| CRAIG LOWE, *et al.*, | |
| Respondents. | |

MEMORANDUM OPINION

DECEMBER 17, 2025

## I.  BACKGROUND

Petitioner, Tahirou Samassa ("Samassa"), a Senegalese citizen seeking asylum in the United States, brings this petition for writ of habeas corpus.[1] Samassa is currently detained at the Pike County Correctional Facility within the Middle District of Pennsylvania.[2] The petition names as Respondents: (1) Craig Lowe, Warden of the Pike County Correctional Facility, (2) Kristi Noem, Secretary of the Department of Homeland Security, (3) the Department of Homeland Security, and (4) Pamela Bondi, the Attorney General of the United States.[3]

On December 4, 2025, Samassa filed an emergency motion for a temporary restraining order ("TRO") asking the Court to enjoin the Government from detaining

---
[1] Doc. 1.
[2] *Id.* ¶ 1.
[3] *Id.* ¶¶ 19-22.

him under 8 U.S.C. § 1225(b)(2), to order his immediate release, and to grant the writ of habeas corpus.[4] For the reasons that follow, the emergency motion for a TRO will be granted.[5]

## II.    DISCUSSION

### A.    Jurisdiction

Respondents' chief objection to the writ of habeas corpus, and subsequently to the motion for a TRO, is that the Court lacks jurisdiction to hear this challenge to Samassa's detention.[6] They point to three sections of the Immigration and Nationality Act ("INA") — Sections 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii) — that they say strip district court of jurisdiction to hear such cases.[7]

Numerous courts, including several courts in the Middle District of Pennsylvania, have had occasion to address the issue of whether these sections or other sections of the INA strip district courts of jurisdiction over challenges to administrative detention.[8] Those courts have been nearly unanimous in their initial determination that the INA does not strip district courts of jurisdiction to hear and

---

[4] Doc. 4.
[5] While the motion for a TRO is granted, the Court notes that the Petition for Writ of Habeas Corpus has not been granted based upon the pending motion.
[6] Doc. 8, at 18-26.
[7] *Id.*
[8] For a more extensive discussion on the jurisdiction of district courts over these matters *see* the Report and Recommendation authored by Magistrate Judge Camoni and adopted by Judge Wilson. *See Santana-Rivas, v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-CV-01896, 2025 WL 3522932 (M.D. Pa. Nov. 13, 2025) (the jurisdictional section of this report was adopted in its entirety).

2

decide these habeas claims.[9] Further, the United States Court of Appeals for the Third Circuit has stated unambiguously that Section 1252(g) "does not sweep broadly."[10] Rather, Section 1252(g) "directs other courts not to hear challenges to three of the Attorney General's 'decision[s] or action[s]': those that 'commence proceedings, adjudicate cases, or execute removal orders.'"[11] As it said, Section 1252(g) "reaches only these three specific actions, not everything that arises out of them."[12]

As Magistrate Judge Camoni succinctly put it: "Petitioner does not ask this Court to review the decision or action to commence immigration proceedings against her, nor to adjudicate her case, nor to impose or eventually execute a removal order. Petitioner only seeks review of her ongoing detention, a heartland

---

[9] *See Patel v. O'Neill,* 3:25-cv-2185, 2025 WL 3516865 (M.D. Pa. Dec. 8, 2025) ("federal district courts to consider this issue have almost universally held that they have jurisdiction to consider habeas petitions like the one filed by Petitioner"); *Quispe v. Rose*, No. 3:25-cv-02276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025); *Cunin v. Brian*, No. 3:25-cv-1887, 2025 WL 3542999 (M.D. Pa. Dec. 10, 2025).

[10] *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 296 (3d Cir. 2020).

[11] *Id.* (quoting 8 U.S.C. § 1252(g)).

[12] *Id. See also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Respondents' arguments under Section 1252(b)(9) fare no better as their application of the section would lead to the "staggering results" discussed by the United States Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). "Under such a regime of unreviewable, indefinite executive detention, any person could be taken into custody and held for any amount of time, without recourse." *Santana-Rivas*, 2025 WL 3522932, at *5. Needless to say, such a regime should surely be avoided, and can easily be avoided with a finding that district courts have the jurisdiction to hear these cases. Further, "Section 1252(b)(9) also does not divest this Court of jurisdiction over the habeas petition, because it 'does not reach claims that are independent of, or wholly collateral to, the removal process.'" *Patel*, 2025 WL 3516865, at *7 (quoting *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d. Cir. 2020)).

3

habeas corpus claim."[13] Respondents ignore the fact that this Court has jurisdiction under 28 U.S.C. §2241(c)(3) to hear habeas corpus cases for persons alleging that they are in custody in violation of the Constitution, laws, or treaties of the United States.[14] Given that Samassa was detained within this Court's jurisdiction and by a custodian within this jurisdiction when he filed the Petition, this Court has jurisdiction to hear the claims within the petition.[15]

**B.     Exhaustion**

Respondents next argue that Samassa's petition and TRO should be denied because he has not exhausted all administrative remedies in this case. However, this ignores the fact that "exhaustion exists only as a judicially created doctrine applied at the Court's discretion."[16] Further, "[c]ourts have found that the exhaustion of administrative remedies may not be required when available remedies provide no opportunity for adequate relief, an administrative appeal would be futile."[17] As Respondents have made clear in their briefing, the Board of Immigration Appeals decision of *In re Hurtado* makes it impossible for Samassa to obtain a bond hearing and be released from detention prior to a removal decision.[18]

---

[13] *Santana-Rivas*, 2025 WL 3522932, at *4.
[14] *Denmore v. Kim*, 538 U.S. 510, 517 (2003); *Rasul v. Bush*, 542 U.S. 466, 483 (2004).
[15] *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (per curiam) (noting jurisdiction for "core habeas petitions" lies in the district of confinement).
[16] *Kashranov v. Jamison*, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *5 (E.D. Pa. Nov. 14, 2025) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).
[17] *Ashley v. Ridge*, 288 F. Supp. 2d 662, 666-67 (D.N.J. 2003).
[18] *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).

4

Therefore, it would be futile for him to pursue administrative remedies and this is a worthy case to excuse any judicially-created exhaustion requirement.

### C.   Temporary Restraining Order

A party seeking a temporary restraining order must establish four factors: "(1) a likelihood of success on the merits, (2) the probability of irreparable harm if the relief is not granted, (3) that granting injunctive relief will not result in even greater harm to the other party, and (4) that granting relief will be in the public interest."[19] Courts use a balancing test to determine whether injunctive relief is warranted.[20] The movant bears the burden of establishing all four elements.[21]

Taking each element in turn, the first is easily satisfied here. Nearly every court who has had occasion to address it have rejected the Respondents contention that all aliens present without parole in the United States must be detained because they are "applicants for admission" who are actively "seeking admission" under Section 1225(b)(2).[22] If more were needed, every court within the Third Circuit that has considered the issue has rejected this contention.[23] While the Court will not opine on the ultimate success of Samassa's habeas petition, the overwhelming

---

[19]   *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) (citing *Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 102 (3rd Cir.1988)).
[20]   *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975).
[21]   *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000).
[22]   *See Santana-Rivas*, 2025 WL 3522932, at *8 (including a collection of many of those decisions).
[23]   *See Santana-Rivas*, 2025 WL 3522932, at *9.

5

quantity of cases—and their quality—demonstrates an extreme likelihood for success on the merits.

The three remaining elements can be quickly disposed of in Samassa's favor. Looking to the probability of irreparable harm, the harm threatened here is the deprivation of liberty due to an unlawful detention. That is a sufficient injury for the purposes of a motion for a TRO.[24] Given the current backlog of "mandatory detainees" that the Executive Office of Immigration Review has on its hands, if a TRO were denied, Samassa would face an indefinite, prolonged detention.[25] That is sufficient here to make out the element of probability irreparable harm.

Finally, a balance of the equities and the public interest both favor granting a TRO in this case. "[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."[26] Further, "public interest favors the protection of constitutional rights, and any comparison of harm to the Government turns mostly on matters of public interest, as those considerations merge when the Government

---

[24] *See Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 (M.D. Pa. 2025) ("In the immigration context, unlawful detention is a sufficient irreparable injury."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (concluding "Plaintiffs have established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time.").

[25] *See* Doc. 4, Ex. 1, at 4.

[26] *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

is an opposing party."[27] Here, the government would suffer no—or very limited—hardship(s) if a TRO was granted and Samassa was released from detention for the pendency of his asylum application.[28] There are assuredly present interests of national security and ensuring the administration of our nation's immigration laws, but the government has not set forth any arguments that these goals would be frustrated by Samassa's release pending his removal decision. Given that "there is a strong public interest in preventing the unnecessary and unlawful detention of persons who otherwise should be set free," both a balance of the equities and the public interest counsel toward granting a TRO here.[29]

## III. CONCLUSION

For the foregoing reasons, Samassa's emergency motion for a TRO will be granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[27] *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).
[28] *See Cunin v. McShane*, No. 3:25-CV-1887, 2025 WL 3542999, at *3 (M.D. Pa. Dec. 10, 2025).
[29] *Id.*